SEECO, INC., Arkansas Western Gas Company, and
Southwestern Energy Company  *v.* Allen HALES, Mary Nelle
Hales, Robert G. Jeffers, David P. Taylor, and Taylor Family
Limited Partnership "A"

98-1038                                    973 S.W.2d 818

Supreme Court of Arkansas
Opinion delivered September 17, 1998

*Everett & Mars*, by: *Thomas A. Mars* and *John C. Everett*; and *Inhofe, Jorgenson, & Balman, P.C.*, by: *J. David Jorgenson*, for appellants.

*Smith, Maurras, Cohen, & Red, PLC*, by: *Don A. Smith* and *S. Walton Maurras*; *Marilyn J. Eickenhorst*; and *Gable & Gotwals*, by: *James M. Sturdivant*, *M. Benjamin Singletary*, and *Oliver S. Howard*,for appellees.

ROBERT L. BROWN, Justice. ▉ ▉ Appellants Seeco, Inc., Arkansas Western Gas Company, and Southwestern Energy Company (Seeco) moved this court to stay the trial of this matter set for September 28, 1998, pending a decision in their interlocu-

tory appeal or, in the alternative, to expedite consideration of the interlocutory appeal. Appellees Allen Hales, Mary Nelle Hales, Robert G. Jeffers, David P. Taylor, and Taylor Family Limited Partnership "A" (Hales) oppose the motion to stay the trial but join in Seeco's request for an expedited appeal. We deny Seeco's motion for a stay of the trial. We expedite consideration of Seeco's appeal from the trial court's orders of August 10, 1998, but only with respect to the sufficiency of the thirty-day notice to Subclass II royalty owners. And we affirm the notice order of the trial court regarding that point.

This is the third appeal we have had concerning this matter. We first affirmed the trial court's certification of the class of royalty owners in *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997) (*Seeco I*). We next affirmed the disqualification of one of Seeco's trial counsel in this matter in *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998) (*Seeco II*). Seeco now has raised the adequacy of Hales's notification of class members both with respect to royalty owners who have an interest in wells operated by Seeco and those Subclass II royalty owners who have an interest in wells operated by third parties under leases which are pooled into a drilling unit.

On May 24, 1996, Hales filed his complaint in this matter on behalf of a class of royalty owners who were interested in wells located in Franklin, Johnson, Washington, Crawford, and Logan counties and claimed unpaid royalties due from Seeco under Contract 59. On September 30, 1996, the trial court entered an order certifying the class, and on November 4, 1996, the trial court approved notice to the class members by mail supplemented by notice in a newspaper of the largest circulation in each of the five counties where the wells were located. Seeco appealed only from the order certifying the class, and the matter was stayed pending that appeal. We affirmed the certification of the class in *Seeco I* on October 30, 1997.

On February 3, 1998, an amended order was entered establishing the procedure for notifying the class members. This order tracked the trial court's order of November 4, 1996, regarding mail and the supplemental publication of notice in local newspa-

pers. It also made reference to the fact, as did the November 4, 1996 order, that Hales would request the names and addresses of Subclass II royalty owners from the third-party operators. Those requests were subsequently made. The notice order was extended on April 7, 1998, and based on the information received, Hales states it sent individual notice by mail on May 5 and 6, 1998, to 4,300 members of Subclass I and 3,000 members of Subclass II. Seeco estimates the number of notices sent to be 6,388. Hales also published notice in the newspapers in the five counties where the wells were located on May 15, 1998. The royalty owners were given until June 22, 1998, to decide whether they wanted to participate in the class action or to opt out of the class. A total of 148 royalty owners chose to opt out of the class, according to Hales. Of the total notices sent, 813 were returned either as nondeliverable or because the royalty owner was deceased, according to Hales. Seeco contends the number of those opting out was more than 1,000 class members.

On July 10, 1998, Seeco moved to dismiss the class action because Hales had failed to identify and notify every class member, as required by Ark. R. Civ. P. 23. The gravamen of the motion was that Hales had failed to obtain the necessary information about particular Subclass II royalty owners from certain third-party operators. Hales, thereafter, subpoenaed the information from the recalcitrant third-party operators. A hearing was held on Seeco's motion, and the orders were entered on August 10, 1998. The first order denied Seeco's motion to dismiss, and the second order called for individual notice by mail to those Subclass II royalty owners who had not been previously notified. The order further stated that the individual notice should occur by August 28, 1998. It also required published notice to class members in the newspaper with the largest circulation in Sebastian County by August 15, 1998. The notice mailed to those Subclass II royalty owners fixed a September 25, 1998 deadline for class members to opt out of the class.

Hales sent out the individual notices by mail to 725 Subclass II royalty owners on August 26, 1998, citing the September 25, 1998 deadline for opting out of the class. Of those 725 persons,

Hales asserts that 289 had previously been mailed notice on May 6, 1998, leaving 409 persons being notified for the first time.

In its notice of appeal from the two August 10, 1998 orders, Seeco cites two points on appeal: (1) the notice procedure does not constitute the "best notice practicable" under due process and Ark. R. Civ. P. 23, and (2) the notice did not give class members a meaningful opportunity to exercise their rights. In its brief, Seeco makes several arguments:

- The first notice mailed to royalty owners on May 5 and 6, 1998, was inadequate, as evidenced by the high number of letters returned, and that certified mail, return receipt requested, and publication in a national newspaper would have been the "best notice practicable under the circumstances" under Ark. R. Civ. P. 23(c).

- Hales should have subpoenaed data on the royalty owners from the third-party operators.

- A thirty-day notice period for opting out of the class under the notice to Subclass II royalty owners fails to meet the requirements of Rule 23 and due process.

██ Our jurisdiction over interlocutory appeals is established by Rule 2(a)9 of our Rules of Appellate Procedure—Civil, which provides that an appeal may be taken from an order granting a motion to certify a class. Furthermore, in *Union National Bank v. Barnhart*, 308 Ark. 190, 198-99, 823 S.W.2d 878, 882 (1992), we explained that in addition to the appealability of an order certifying a class action, "an order prescribing notice of the class action is 'fundamental to the further conduct of the case' and is appealable." Thus, our jurisdiction in this interlocutory appeal is limited to those parts of the August 10, 1998 orders that prescribe notice of the class action.

██ ██ Seeco mounts several arguments regarding the defective notice initially sent out to royalty owners on May 5 and 6, 1998, and published in the five local newspapers. It urges that the trial court erred in failing to dismiss the class action in the August 10, 1998 order because of these defects and the absence of compliance with Rule 23 and due process. The order denying Seeco's motion to dismiss, however, does not prescribe notice and

as a result is not a proper issue for appeal at this juncture under *Union National Bank v. Barnhart, supra.* But, in addition, the questions concerning regular mail versus certified mail and publication in a national newspaper supplemented by publication in a newspaper in the five counties either were resolved in the trial court's order of November 4, 1996, or were not raised in connection with that order. No appeal was taken from that notice order, and it is now law of the case. *See Van Houten v. Pritchard,* 315 Ark. 688, 870 S.W.2d 377 (1994).

■ With respect to Seeco's subpoena point, we similarly note that that issue was not raised with respect to the November 4, 1996 order, and, in any event, Hales has now subpoenaed the necessary information from the third-party operators.

The sole issue that is properly before this court is the issue of the prescribed notice for those Subclass II royalty owners which was to occur between August 28, 1998, and September 25, 1998. Narrowed even further, the issue is whether a twenty-eight-day notice (in actuality, it was a thirty-day notice based on the fact that the notices were mailed on August 26, 1998), meets the requirements of Rule 23 and due process. We conclude that it does.

■ The mechanics of notice to class members is left to the discretion of the trial court and is subject only to the reasonableness standard of due process. *See Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied,* 423 U.S. 864 (1975). Arkansas Rule of Civil Procedure 23(c) provides in part that "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The United States Supreme Court has made reference to the fact that the "best notice practicable" under Federal Rule 23 is individual notice. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974). Notice by publication is used to supplement individual notice when class members cannot be identified by reasonable efforts. *See Eisen v. Carlisle & Jacquelin, Id.*

Using these standards, we turn to the facts of this case. According to Hales, 725 notices went out by regular mail on

August 26, 1998, and of that number, 289 members had previously been notified of the class action on May 5 or 6, 1998. Granted, it would have been preferable to have provided more time, and Seeco makes much of the complexity of the lawsuit and the time constraints inherent in retaining counsel and reaching an informed and intelligent decision in thirty days about whether to participate or opt out of the class. But we do not view the time period as unreasonably abbreviated so as to deprive the royalty owners of due process of law or to violate Rule 23.

Seeco primarily relies on *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824 (3d Cir. 1973), in support of its position. In *Greenfield*, the issue was notice to shareholders of a proposed class action settlement. Notice of the proposed settlement was published in the *Wall Street Journal* and *The Philadelphia Evening Bulletin* once a week for two consecutive weeks. The shareholders had just over thirty days from the last published notice to file proofs of claim or requests for exclusion. Some members of the class had left their stock in the "street name" with their stockbrokers, and the Third Circuit Court of Appeals concluded:

> A one-month period hardly seems sufficient time for brokerage firms to search their records, notify customers, probably by mail, for whom they held shares in street name, received (sic) instructions from these customers, again probably by mail, and file the proofs of claim or requests for exclusion.

483 F.2d at 834. The Third Circuit, accordingly, held that the notice was fatally defective.

■ We view the *Greenfield* case to be categorically different from the case at bar. Here, individual notices were mailed directly to the 725 Subclass II members, some of whom had been previously notified. We do not view the notice period to be *per se* unreasonable for making an informed decision on whether to stay in or opt out of the class. We note in an analogous situation that a thirty-one-day notice has passed muster as a reasonable time for class members to refuse a proposed settlement. *See Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993). Moreover, should one or more royalty owners consider the time frame to be unreasonably brief, that matter could be raised to the trial court by

those aggrieved persons or entities. We have made reference to the fact that the trial court has continuing jurisdiction to correct any deficiencies in notice during the litigation. *See Union National Bank v. Barnhart, supra.*

■ Rule 23(c) does not specify when notice must be sent to class members but leaves the matter to the discretion of the trial court. *See R & D Business Systems v. Xerox Corp.* 150 F.R.D. 87, 91 (E.D. Tex. 1993) (interpreting Fed. R. Civ. P. 23(c)(2)); *see also Reporter's Notes 2,* Ark. R. Civ. P. 23. We hold that the trial court did not abuse its discretion in prescribing the notice for those Subclass II royalty owners in its August 10, 1998 order.

Affirmed.

THORNTON, J., not participating.