NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 13 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LOUISE KING, Individually, and as
Personal Representative of the Estate of
Timothy King,

Plaintiff-Appellee,

v.

GEICO INDEMNITY COMPANY,

Defendant-Appellant.

No.    14-35700

D.C. No. 1:12-cv-00092-RWA

MEMORANDUM*

Appeal from the United States District Court
for the District of Montana
Richard W. Anderson, Magistrate Judge, Presiding

Argued and Submitted August 29, 2017
Seattle, Washington

Before:  McKEOWN and GOULD, Circuit Judges, and ROTHSTEIN,** District
Judge.

GEICO Indemnity Company ("GEICO") appeals multiple district court

orders in an insurance suit brought by Louise King.  Because the parties are

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**       The Honorable Barbara Jacobs Rothstein, United States District Judge
for the Western District of Washington, sitting by designation.

familiar with the facts, we do not recite them here. We have jurisdiction under 28 U.S.C. § 1291. We remit the punitive damages award and affirm all other issues.

1. Constitutionality of Punitive Damages Award

GEICO argues that the district court erred by not reducing the jury's $2.5 million punitive damages award. We review de novo a district court's determination that punitive damages are constitutionally appropriate. *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005).

Three "guideposts" inform our analysis: (1) the degree of reprehensibility, (2) the disparity between the harm suffered and the punitive damages award, and (3) the difference between the punitive damages award and comparable authorized civil penalties. *BMW of N. Am. v. Gore*, 517 U.S. 559, 574–75 (1996). We evaluate each in turn.

GEICO's conduct, while not admirable, was of low to moderate reprehensibility. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (listing five factors that inform a reprehensibility analysis, including whether the harm was physical or economic, evinced indifference to the health or safety of others, or resulted from intentional malice or deceit). On one hand, King suffered only economic and emotional harm. She was not physically injured and GEICO did not evince indifference to the health or safety of King or anyone else.

2

On the other hand, the jury's verdict regarding GEICO's liability under the Montana Unfair Trade Practices Act ("UTPA") indicates that the jury believed GEICO was acting in bad faith.

The disparity between King's actual harm and the level of punitive damages awarded her is significant. We are not bound by a particular formula, but where a defendant's conduct "is not particularly egregious" and there are "significant economic damages," a four-to-one ratio is "a good proxy for the limits of constitutionality." *Planned Parenthood*, 422 F.3d at 962. For purposes of calculating the ratio here, we include the $266,070.61 in compensatory damages and fees awarded to King for her harm—$100,000 for GEICO's violation of the UTPA, $100,000 under the insurance policy for her emotional distress, and $66,070.61 in attorneys' fees, interest, and costs.[1] *See Estate of Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349, 358 ("[W]e hold that where an insurer has been found to have violated the UTPA due to delay or refusal to pay benefits in breach of the insurance contract, damages resulting from that violation may be considered compensatory damages under the UTPA for purposes of pursuing punitive damages."); *see also Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1007 (9th Cir. 2009) ("[A]n insured is entitled to recover attorney fees, pursuant to

---

[1] GEICO's obligations to the estate of King's husband were discharged before trial commenced.

3

the insurance exception to the American Rule, when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract.") (quoting *Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer*, 69 P.3d 652, 660 (Mont. 2003)) (internal quotation marks omitted). Thus, the ratio between King's actual harm—$266,070.61—and her punitive damages award—$2.5 million—is roughly nine-to-one. This is significantly higher than the four-to-one proxy that we apply in similar contexts.

Turning to the third guidepost, in Montana, the maximum comparable civil penalty is a fine for violation of the Montana insurance code, which may not exceed $25,000, and the fine imposed on insurance producers or adjusters may not exceed $5,000 per violation. Mont. Code § 33-1-317. Thus, the maximum relevant civil penalty is significantly lower than the $2.5 million punitive damages award.

Based on our evaluation of the guideposts, we conclude that the punitive damages award is unconstitutionally excessive.[2] Given the low to moderate reprehensibility of GEICO's conduct and the disparate ratio between King's actual harm and the punitive damages award, we follow the guidance in *Planned*

---

[2] The $2.5 million verdict in this appeal complies with Montana law, which limits punitive damages to the lesser of $10 million or 3% of the defendant's net worth, Mont. Code § 27-1-220(3); however, the award is nonetheless unconstitutionally excessive.

4

*Parenthood* and apply a four-to-one ratio and direct the district court to remit the punitive damages award to $1,064,282.44.

2.  Admission of Expert Testimony

The district court did not abuse its discretion by admitting the testimony of King's expert, Randy Nelson. A jury verdict will not be reversed for evidentiary error unless the district court abused its discretion and the error was prejudicial. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004).

Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards, and the reasonableness of an insurer's claims handling is generally an issue of fact. *Id*. at 1010, 1016 (disagreeing that testimony that an insurance company deviated from industry standards offered a legal conclusion). Nelson's testimony fell well within these parameters. Nelson did not address an ultimate issue of law, but rather testified to GEICO's handling of the claim in relation to industry standards and GEICO's own claim manual. The fact that GEICO's claim manual incorporated the UTPA does not lead to a different result. *See id*. at 1016-17 (an expert may refer to law in expressing an opinion without such reference rendering the opinion inadmissible).

3.  Post-Trial, Discovery-Related Motions

Finally, GEICO argues that the district court erred by denying its motion for

5

a new trial and motion to compel or reopen discovery based on King's failure to produce certain documents during discovery. GEICO also challenges the district court's award to King of attorneys' fees for opposing GEICO's motion to compel. We affirm the district court on each of these challenges. A district court's determination regarding whether to grant a new trial or reopen discovery is reviewed for abuse of discretion. *See Hangarter*, 373 F.3d at 1005 (new trial); *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988) (discovery). The decision to award reasonable fees under Federal Rule of Civil Procedure 37(a)(5) is also reviewed for abuse of discretion. *Balla v. Idaho*, 677 F.3d 910, 918, 920 (9th Cir. 2012).

Under Federal Rule of Civil Procedure 59, a new trial may be warranted for discovery misconduct when the movant can: "(1) prove by clear and convincing evidence that the verdict was obtained through . . . misconduct," and "(2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir. 1990). Failure to produce materials requested in discovery can constitute "misconduct" for Rule 59 purposes. *See id.* at 879. GEICO knew there was no attorney-client relationship before May 2012 at least as early as trial, when both King and Randy Bishop testified that they had only conferred as friends until that point. Despite this knowledge, GEICO did not request the documents or object to

6

what King produced during discovery. Instead, GEICO waited until after the verdict and entry of judgment. There is no clear or convincing evidence that the verdict was obtained through misconduct. Thus, the district court did not abuse its discretion in denying GEICO's motion for a new trial.

The same is true of the district court's denial of GEICO's motion to compel and reopen discovery. The district court explained that GEICO filed its motion to compel after the discovery deadline and, regardless, its motion was futile because the jury had returned a verdict and judgment already had been entered. Accordingly, we agree there was no compelling reason—as required by the scheduling order for a deadline continuance—to grant GEICO's untimely motion. The district court did not abuse its discretion by denying GEICO's motions.

Finally, we agree with the district court that GEICO's motion for leave to file a motion to compel was "at its core, a motion to compel," and was not substantially justified. The district court did not abuse its discretion in awarding King reasonable fees to oppose the motion under Federal Rule of Civil Procedure 37(a)(5).

**AFFIRMED IN PART; REVERSED AND VACATED IN PART.**

Each party shall bear its own costs on appeal.